332 S.E.2d 819

**Wanda Sue DAVIS**

v.

**Robert J. ROBERTSON and Jack Davis.**

**Case No. CC941.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 1985.

Decided April 22, 1985.

---

Menis E. Ketchum, Greene, Ketchum, Bailey & Tweel, Huntington, Monty L. Preiser, Laurie J. Garrigan, Preiser & Wilson, Charleston, for plaintiff.

James D. McQueen, Huntington, for respondents.

Richard Conley; Lawrence J. Lewis, Vinson, Meek, Lewis & Pettit, Huntington, for State Farm.

G. Charles Hughes, Moundsville, amicus curiae, for The Association of Trial Lawyers of America.

MILLER, Justice:

The principal issue in this certified case is whether a plaintiff may bring a direct action against an insurance company without first obtaining a judgment against the insured. The Circuit Court of Wayne County certified two questions:

"1. Is a liability insurance carrier who insures a defendant in a civil action a real party in interest and an indispensable party in a civil action and properly includable as a defendant in a civil action?

"2. When an uninsured motorist is made a defendant in a civil action and is covered by liability insurance under another motorist's insurance policy for his neglect, may this insurance carrier be made a party defendant to the action as an indispensable party or real party in interest?"

We answer both questions in the negative.

This case arises from an automobile collision that occurred on U.S. Route 152 in Wayne, West Virginia on February 11, 1981. Wanda Sue Davis, a passenger in a car driven by her husband, Jack Davis, was injured when their car collided with a vehicle driven by Robert J. Robertson. Both drivers were named as defendants in a suit filed by Mrs. Davis in the Circuit Court of Wayne County. Jack Davis was represented by counsel provided by his insurance company, State Farm Mutual Insurance Company (State Farm). Robert J. Robertson, an uninsured motorist, represented himself.

Prior to trial, Robertson spoke with an agent of State Farm, Laurence J. Lewis, and learned that if he did not continue to appear and defend himself at trial, State Farm would pursue a subrogation claim against him for any amounts it was required to pay Wanda Sue Davis on account of his negligence. On the day of trial, plaintiff's counsel learned of this conversation and filed a motion to join State Farm as a real party in interest under W.Va. R.Civ.P. 17(a).[1] The trial judge denied this motion and certified the issue to us.

1. Although not raised by the parties, it is ques-       tionable whether a Rule 17 motion was the

## I.

Earlier decisions in this jurisdiction clearly indicate that an injured plaintiff cannot join the defendant's insurance company in a suit for damages arising from a motor vehicle accident. An insurer cannot be joined as a defendant with an insured unless a right of joinder is conferred by statute or the terms of the policy itself. In *Cramblitt v. Standard Acc. Ins. Co.*, 116 W.Va. 359, 180 S.E. 434 (1935); *Lusk v. Lusk*, 113 W.Va. 17, 166 S.E. 538 (1932); and *Conwell v. Hays*, 103 W.Va. 69, 136 S.E. 604 (1927), we held that an insurer could be joined where policy riders stated that the promises of the policies inured to the benefit of anyone suffering bodily injury or property damage because of the insured's negligence. We concluded that the policy language in effect constituted a direct liability to such persons "whether an action for damages [was] brought against the named assured or jointly with the company." 103 W.Va. at 70, 136 S.E. at 604. In two cases, joinder was not allowed because under our former pleading rule, a contract claim could not be joined with a tort claim. *Shepherd v. Pocahontas Transp. Co.*, 100 W.Va. 703, 131 S.E. 548 (1926); *O'Neal v. Pocahontas Transp. Co.*, 99 W.Va. 456, 129 S.E. 478 (1925).

We were presented in *Campbell v. Campbell*, 145 W.Va. 245, 114 S.E.2d 406 (1960), with a certified question concerning the right of a plaintiff to join her husband and his automobile insurer as codefendants. We held that the insurer was not a proper party, partly because there was no cause of action against the insurer until the liability of the insured had been established. This same reasoning was used in *Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981), where we held that a violation of W.Va.Code, 33–11–

4(9), relating to unfair insurance claim practices, gave rise to a cause of action against recalcitrant insurance companies. We concluded, however, that the suit could not be brought until the plaintiff's underlying suit against the insured had been resolved.

In Syllabus Point 1 of *Broy v. Inland Mut. Ins. Co.*, 160 W.Va. 138, 233 S.E.2d 131 (1977), we stated that the necessary precondition for bringing suit against an insurer was a judgment against the insured: "If an insured with coverage under a liability insurance policy does not pay the underlying judgment entered in a personal injury action, the injured plaintiff may institute a direct action against the insurance company to recover the amount of the judgment up to the limits of the policy."

Our West Virginia rule that an insurance company may not be sued prior to judgment against the insured, absent contrary language in controlling statutes or the policy itself, is consistent with the rule adopted by a majority of other states. 8 J. Appleman & J. Appleman, Insurance Law & Practice § 4861 at 558–63 (1981); 12A G. Couch, Cyclopedia of Insurance Law §§ 45:784, :785 (rev. 2d ed. 1981); *see Magras v. Puerto Rican American Ins. Co.*, 551 F.Supp. 427 (D.V.I.1982); *Aetna Ins. Co. v. Pennsylvania Mfr's. Ass'n*, 456 F.Supp. 627 (E.D.Pa.1978); *Globe Indem. Co. v. Teixeira*, 230 F.Supp. 444 (D.Hawaii 1963); *Baughman v. Harbor Ins. Co.*, 450 So.2d 1090 (Ala.1984); *Butler v. Sequeira*, 100 Cal.App.2d 143, 223 P.2d 48 (1950); *Smith v. Commercial Union Assur. Co.*, 246 Ga. 50, 268 S.E.2d 632 (1980); *Seaboard Coastline R.R. Co. v. Freight Delivery Serv., Inc.*, 133 Ga.App. 92, 210 S.E.2d 42 (1974); *Olokele Sugar Co. v. McCabe*, 53 Hawaii 69, 487 P.2d 769 (1971); *Pocattello Indus. Park Co. v. Steel West, Inc.*,

proper method for attempting to add State Farm as a defendant. Subsection (a), which deals with real parties in interest, states in pertinent part that "[e]very action shall be prosecuted in the name of the real party in interest." This language suggests that Rule 17 has no bearing on who should be joined as a defendant unless the defendants already in the action have filed cross-claims or counterclaims. *See Singh v. August*, 10 V.I. 389 (1974) (Fed.R.Civ.P. 17

does not apply to defendants). *See generally* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1543 (1971). *But see B.P. Oil, Inc. v. Bethlehem Steel Corp.*, 536 F.Supp. 293 (E.D.Pa. 1982) (Fed.R.Civ.P. 17 can be used to add defendants). Joinder questions concerning defendants are normally resolved under Rule 19 (necessary and indispensable parties) and Rule 20 (permissive joinder).

101 Idaho 783, 621 P.2d 399 (1980); *White v. Goodville Mut. Cas. Co.,* 226 Kan. 191, 596 P.2d 1229 (1979); *Davis v. Furlong,* 328 N.W.2d 150 (Minn.1983); *Chapman v. Farmers Ins. Group,* 90 N.M. 18, 558 P.2d 1157 (Ct.App.1976); *Zeigler v. Ryan,* 63 S.D. 607, 262 N.W. 200 (1935); *Russell v. Hartford Cas. Ins. Co.,* 548 S.W.2d 737 (Tex.Civ.App.1977). *See generally* Annot., 20 A.L.R.2d 1097 (1951); Annot., 7 A.L.R. 1003 (1920).

The plaintiff cites two cases from other jurisdictions where courts did not rely on statutory or policy provisions in allowing a direct action against, or joinder of, the insurance company, but we do not find them persuasive. One of these decisions, *Shingleton v. Bussey,* 223 So.2d 713 (Fla.1969), has been legislatively overruled. *See Van Bibber v. Hartford Acc. & Indem. Ins. Co.,* 439 So.2d 880 (Fla.1983) (upholding Fla. Stat.Ann. § 626.7262 (1982) against constitutional challenge). The other decision, *Seider v. Roth,* 23 A.D.2d 787, 258 N.Y.S.2d 795 (1965), authorized a New York plaintiff to obtain quasi in rem jurisdiction over a Canadian motorist through attachment of the defendant's insurance policy. This, in a sense, is a type of direct action against the insurer, but it is doubtful whether the *Seider* rule is valid after *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). *See Wallace v. Target Store, Inc.,* 92 Misc.2d 454, 400 N.Y.S.2d 478 (1977) (memorandum) (*Shaffer* overrules *Seider*); *Katz v. Umansky,* 92 Misc.2d 285, 399 N.Y.S.2d 412 (1977) (same). *But see O'Conner v. Lee-Hy Paving Corp.,* 437 F.Supp. 994 (E.D.N.Y.1977), *aff'd,* 579 F.2d 194 (2d Cir.), *cert. denied,* 439 U.S. 1034, 99 S.Ct. 639, 58 L.Ed.2d 696 (1978).

The plaintiff also relies on *Anderson v. McDonald,* 170 W.Va. 56, 289 S.E.2d 729 (1982), where we held in Syllabus Point 1 that:

> "When a release of liability is obtained by the representative of an insurance company and in a negligence action against the insured, the insured pleads the release as an affirmative defense pursuant to *W.Va.R.Civ.P.* 8(c), and the plaintiff has moved to join the insurance company as a party to the action, the trial judge may join the insurance company as a party to the action pursuant to *W.Va.R.Civ.P.* 20."

We allowed joinder in that case because the insurance company had a "substantial interest" in the release issue, 170 W.Va. at 60, 289 S.E.2d at 734, and its insured had raised the release issue through a counterclaim seeking specific performance of the release. We concluded that the release issue had a substantial bearing on the plaintiff's ability to prevail and that since it was procured by the insurance company, the trial court did not abuse its discretion in joining the insurance company to avoid multiplicity of trials. We do not have any release issue in this case.

Furthermore, the insurance policy in this case does not authorize the plaintiff to bring suit against the insurance company prior to obtaining a judgment against the insured. Indeed, the policy expressly forbids joining the insured and the insurer as defendants in the same action.[2]

Looking to our statutes, we find no language expressly authorizing direct action or joinder. The plaintiff does not argue that our Motor Vehicle Responsibility Safety Law authorizes direct action by requiring drivers to obtain liability insurance or

---

**2.** The insurance policy provides, in pertinent part:

> "Action Against Company. No action shall lie against the company:
> (a) unless as a condition precedent thereto there shall have been full compliance with all terms of this policy.
> (b) under coverages A and B [the liability portion of the policy] until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial and affirmed on appeal, if an appeal has been taken from said judgment, or by written agreement of the insured, the claimant, and the company.
> "Any person or organization, or the legal representative thereof, having secured such judgment or agreement, shall be entitled to recover under this policy to the extent of the insurance afforded. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability."

some equivalent form of security before operating their vehicles upon any roadway in this state.[3] A similar argument was rejected in *Criss v. United States Fidelity & Guaranty Co.*, 105 W.Va. 380, 142 S.E. 849 (1928); *Shepherd v. Pocahontas Transp. Co., supra,* and *O'Neal v. Pocahontas Transp. Co., supra,* where we did not allow joinder of the insurance carriers, even though the defendant, a public carrier, had been required by statute to obtain insurance or post bond.[4] It would be much easier to infer a right of direct action from the language set out in note 4 than from the language of our Motor Vehicle Responsibility Safety Law, W.Va.Code, 17D–2A–1, *et seq.*

It has long been our policy in this State to avoid the unnecessary mention of insurance coverage at trial because of its possibly prejudicial effect on the jury's verdict.[5]

*Coffindaffer v. Coffindaffer,* 161 W.Va. 557, 244 S.E.2d 338 (1978); *Leftwich v. Wesco Corp.,* 146 W.Va. 196, 119 S.E.2d 401 (1961), *overruled on other grounds, Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979). Allowing routine joinder of insurance companies in motor vehicle accident cases would necessarily inject the insurance issue in all such cases. It was this sort of consideration that led us to conclude that a statutory action for unfair insurance claim settlement practices could not be pursued against an insurance company until a judgment had been obtained against the insured. *See Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. at 608–609 n. 11, 280 S.E.2d at 259 n. 11.

We are not disposed to nullify our longstanding rule by allowing joinder. We,

3. W.Va.Code, 17D–2A–3, requires "[e]very owner or registrant of a motor vehicle required to be registered and licensed in this State [to] maintain security as hereinafter provided." Such security can take the form of an insurance policy meeting the requirements of W.Va.Code, 17D–4–2 and 17D–3–5, or "any other method approved by the commissioner of the department of motor vehicles of this State as affording security equivalent to that offered by the policy of insurance." *Id.* Couch states in his treatise on insurance law that:

"Under a policy required by statute or ordinance, it is generally held that the insurer may be joined as a defendant with the insured in an action by an injured third person, on the theory that, under the laws requiring and controlling compulsory insurance, a direct or joint right is created in favor of the injured person against both the insured and the insurer." 12A G. Couch, *supra,* § 45:932 at 589. (Footnote omitted).

However, many of the cases cited in support of this statement rely on statutes expressly authorizing suit or joinder. We also note that there are cases holding that statutes requiring a person to obtain insurance before engaging in a certain activity do not allow an injured person to obtain a judgment against the insurer before suing the insured. *See, e.g., Baughman v. Harbor Ins. Co.,* 450 So.2d 1090 (Ala.1984); *Crowley v. Hardman Bros.,* 122 Colo. 489, 223 P.2d 1045 (1950) (en banc).

4. The statute analyzed in those cases stated:

"No certificate shall be issued by the state road commission to any applicant until and after such applicant shall have filed with the state road commission a bond with surety approved by the commission or liability insur-

ance satisfactory to the commission, and in such sum as the commission may deem necessary to adequately protect the interest of the public with due regard to the number of persons and the amount of property involved, which bond shall bind the obligors thereunder to make compensation for injury to persons and loss of or damage to property, resulting from the operation of such motor vehicles; provided, however, that in all cases where the financial responsibility of the applicant is less than five thousand dollars the state road commission shall require for each such motor vehicle a liability insurance bond in some company duly authorized to do business in this state in at least the sum of one thousand dollars and conditioned as above set forth. The state road commission shall adopt and furnish such rules and regulations as may be found necessary to carry out the provisions of this section." *O'Neal v. Pocahontas,* 99 W.Va. at 460, 129 S.E. at 479–80.

5. A similar rule is found in Rule 411 of the West Virginia Rules of Evidence, adopted on December 18, 1984, effective February 1, 1985:

"Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, if controverted, or bias or prejudice of a witness."

This rule is based on Rule 411 of the Federal Rules of Evidence. For a thorough discussion of the federal rule, see Annot., 40 A.L.R.Fed. 541 (1978).

therefore, hold that an injured plaintiff may not join the defendant's insurance carrier in a suit for damages filed against a defendant arising from a motor vehicle accident, unless the insurance policy or a statute authorizes such direct action.

## II.

The second certified question centers on whether our uninsured motorist statute permits a plaintiff to bring a direct action against his own carrier which affords the uninsured motorist coverage. W.Va.Code, 33–6–31(b), provides that every insurance policy issued or delivered in this state "shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover from the owner or operator of an uninsured motor vehicle" within certain minimum limits. This statute also sets out procedures for suing uninsured motorists, whether they are known [6] or unknown.[7]

In a number of jurisdictions which have rather general uninsured motorist statutes, courts have concluded that an insured party may sue his insurer without obtaining a judgment against the uninsured motorist who injured him. *See Cline v. Aetna Ins. Co.,* 317 F.Supp. 1229 (S.D.Ala.1970); *Grayson v. Nat'l Fire Ins. Co.,* 313 F.Supp. 1002 (D.P.R.1970) (applying New Jersey law); *Rhault v. Tsagarakos,* 361 F.Supp. 202 (D.Vt.1973); *State Farm Fire & Cas. Co. v. Lambert,* 291 Ala. 645, 285 So.2d 917 (1973) (dictum); *State Farm Mut. Auto. Ins. Co., Inc. v. Griffin,* 51 Ala.App. 426, 286 So.2d 302 (1973); *Hartford Acc. & Indem. Co. v. Warren,* 246 Ark. 323, 438 S.W.2d 31 (1969); *Indiana Ins. Co. v. Noble,* 148 Ind.App. 297, 265 N.E.2d 419 (1970); *Winner v. Ratzlaff,* 211 Kan. 59, 505 P.2d 606 (1973); *Puckett v. Liberty Mut. Ins. Co.,* 477 S.W.2d 811 (Ky. 1971); *Reese v. State Farm Mut. Auto. Ins. Co.,* 285 Md. 548, 403 A.2d 1229 (Ct. App.1979); *Harthcock v. State Farm Mutual Auto. Ins. Co.,* 248 So.2d 456 (Miss. 1971); *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713 (Mo.1979); *Reese v. Preferred Risk Mut. Ins. Co.,* 457 S.W.2d 205 (Mo.Ct.App.1970); *Lane v. State Farm Mut. Auto. Ins. Co.,* 209 Neb. 396, 308 N.W.2d 503 (1981) (per curiam); *Wood v.*

6. W.Va.Code, 33–6–31(d), provides that:

"Any insured intending to rely on the coverage required by subsection (b) of this section shall, if any action be instituted against the owner or operator of an uninsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named party defendant; such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured motor vehicle or in its own name.

"Nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding."

7. The relevant portions of W.Va.Code, 33–6–31(e), state:

"If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured be unknown, the insured, or someone in his behalf, in order for the insured to recover under the uninsured motorist endorsement or provision, shall:

"(i) Within twenty-four hours after the insured discover, and being physically able to report the occurrence of such accident, the insured, or someone in his behalf, shall report the accident to a police, peace or judicial officer, or to the commissioner of motor vehicles, unless the accident shall already have been investigated by a police officer; and

"(ii) Notify the insurance company, within sixty days after such accident, that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unknown and setting forth in support thereof; ...

"(iii) Upon trial establish that the motor vehicle, which caused the bodily injury or property damage, whose operator is unknown, was a 'hit and run' motor vehicle.... If the owner or operator of any motor vehicle causing bodily injury or property damage be unknown, an action may be instituted against the unknown defendant as 'John Doe,' in the county in which the accident took place ...; service of process may be made by delivery of a copy of the complaint and summons or other pleadings to the clerk of the court in which the action is brought, and service upon the insurance company issuing the policy shall be made as prescribed by law as though such insurance company were a party defendant. The insurance company shall have the right to file pleadings and take other action allowable by law in the name of John Doe."

*Millers Nat'l Ins. Co.,* 96 N.M. 525, 632 P.2d 1163 (1981); *Wright v. Fidelity & Cas. Co. of New York,* 270 N.C. 577, 155 S.E.2d 100 (1967); *Keel v. MFA Ins. Co.,* 553 P.2d 153 (Okla.1976); *State Farm Mut. Auto. Ins. Co. v. Matlock,* 446 S.W.2d 81 (Tex.Civ.App.1969), *modified,* 462 S.W.2d 277 (Tex.1970); *see generally,* A. Widiss, A Guide to Uninsured Motorist Coverage § 7.16 at 269 (1969); 12A G. Couch, *supra,* § 45:644 at 182; 8C J. Appleman & J. Appleman, Insurance Law and Practice § 5089 at 336 (1981); 7 Am.Jur.2d *Automobile Insurance* § 334 at 1041–43 (1980); Annot., 73 A.L.R.3d 632 (1976). These decisions are based on several considerations. In some cases, the uninsured motorist statute or a policy issued thereunder permitted a direct action. A more frequent basis is the generality of the uninsured motorist statute and the absence of any provisions as to how such suits are to be brought.

It should be noted, however, that none of the cases allowing suit to be brought involved statutes providing for John Doe suits where an uninsured motorist is unknown as ours does. Furthermore, most of these cases did not involve statutes with provisions similar to W.Va.Code, 33–6–31(d), which deals with suits against known uninsured motorists. The statutes of Virginia, Georgia and South Carolina are very similar to ours, and each of these statutes has been construed as precluding direct action or joinder. *See O'Brien v. Government Employees Ins. Co.,* 372 F.2d 335 (3d Cir.1967) (construing Virginia statute); *King v. State Farm Mut. Auto. Ins. Co.,* 117 Ga.App. 192, 160 S.E.2d 230 (1968); *State Farm Mut. Auto. Ins. Co. v. Girtman,* 113 Ga.App. 54, 147 S.E.2d 364 (1966); *Midwest Mut. Ins. Co. v. Aetna Cas. & Sur. Co.,* 216 Va. 926, 223 S.E.2d 901 (1976). *See also Glover v. Tennessee Farmers Mut. Ins. Co.,* 225 Tenn. 306, 468 S.W.2d 727 (1971).

■ In *O'Brien v. Government Employees Ins. Co.,* the court discussed the Virginia statute at some length and focused particularly on the statute's detailed provisions for filing suit:

"The existence of detailed provisions regulating suit by an insured against a known uninsured motorist indicates at the minimum that the Virginia legislature envisioned such a suit as part of the recovery mechanism. Moreover, had a direct action against the insurer been thought to be available, the most obvious situation for its application would have been the case where the motorist was unknown. Yet, for this occurrence the Virginia legislature created a John Doe procedure to simulate, as closely as circumstances will permit, a suit against a known motorist. The failure of the legislature to employ the much simpler procedure of a direct suit against the insurer negatives its availability.... [W]e think the District Court was clearly right in stating that ...

'If the plaintiff already had the right to sue the insurance company directly, this court can think of no reason why the General Assembly of Virginia would have enacted the alternative procedure allowing the plaintiff to proceed against a fictional person. It would be especially absurd here where it is an avenue that is more cumbersome than making the insurance company the actual defendant.'

The District Court also reasoned that the purpose of the John Doe procedure was to prevent the jury from being informed of the existence of insurance coverage so as to avoid prejudgment on the question of liability." 372 F.2d at 339. (Footnotes omitted).

We find this analysis equally applicable to the language of our own uninsured motorist statute and, therefore, conclude that W.Va.Code, 33–6–31, does not authorize a direct action against the insurance company providing uninsured motorist coverage until a judgment has been obtained against the uninsured motorist. Having answered the certified questions, we dismiss the case from our docket.

Case Dismissed.